## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TATA INTERNATIONAL METALS (AMERICAS) LTD., | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | : <br> : |
| UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; KATHERINE C. TAI, U.S. TRADE REPRESENTATIVE; U.S. CUSTOMS & BORDER PROTECTION; TROY A. MILLER, SENIOR OFFICIAL PERFORMING THE DUTIES OF THE COMMISSIONER OF U.S. CUSTOMS & BORDER PROTECTION, | :     Case No. 21-00174 <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : <br> : |

## **COMPLAINT**

Plaintiff Tata International Metals (Americas) Ltd., by and through their attorneys, allege and state as follows:

1.     This action concerns Defendants' unlawful imposition of tariffs on goods from the People's Republic of China pursuant to Section 301 of the Trade Act of 1974 ("Trade Act") (19 U.S.C. § 2414).  Specifically, this Complaint focuses on Defendants' untimely and unauthorized imposition of tariffs on products covered by the so-called "List 4A".  *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019) (publishing "List 4A").

2.     The Office of the United States Trade Representative ("USTR") conducted an investigation into China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act of 1974 ("Trade Act") (19 U.S.C. § 2411).  Section 304 of the Trade Act (19 U.S.C.

§ 2414) required the USTR to determine what action to take, if any, within 12 months after initiating the investigation.  Within 12 months after initiation of the investigation, the USTR determined to impose import tariffs on goods from China pursuant to Section 301(b) of the Trade Act on two groupings of tariff codes, commonly referred to as "List 1" and "List 2".  But the USTR failed to meet this statutory time-frame when it issued List 3 on September 21, 2018 and when it issued List 4A on August 20, 2019.  Section 307 of the Trade Act allows the USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the foreign country's discriminatory practice has "increased or decreased" or when the action "is no longer appropriate".  (19 U.S.C. § 2417).  Section 307 of the Trade Act does not permit the USTR to expand the imposition of tariffs to other imports from China for reasons untethered to the unfair intellectual property policies and practices it originally investigated under Section 301 of the Trade Act.  Similarly, the USTR may not invoke the modification provisions of Section 307 of the Trade Act to justify or support its untimely, new and additional tariff actions imposed under List 4A.  Even if the USTR deems the existing tariffs "no longer appropriate," as it did here, the Trade Act permits the USTR only to delay, taper, or terminate—not ratchet up—the actions already taken.

3.      The arbitrary manner in which Defendants implemented the List 4A tariff action also violated the Administrative Procedure Act ("APA").  Specifically, the USTR failed to provide sufficient opportunity for public comment and failed to take relevant facts and factors into consideration in making its decision.  The USTR's preordained decision-making bears no resemblance to the standards that the APA demands.

4.     The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund (with interest) any duties paid by Plaintiff pursuant to List 4A.

## JURISDICTION

5.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . .tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

6.     Plaintiff Tata International Metals (Americas) Ltd. is a division of Tata International Limited, which is a global trading and distribution company with a network of offices and subsidiaries spanning more than 39 countries in Africa, Asia, Europe, and the Americas. Tata International Metals (Americas) Ltd. is incorporated in Delaware and has its principal place of business in Schaumburg, Illinois, with additional offices in Portland, Oregon.  Tata International Metals (Americas) Ltd. is a U.S. importer of steel products from various countries, including China. Tata International Metals (Americas) Ltd. is an importer of products identified on List 4A which are subject to Section 301 tariffs.

7.     Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

8.     The Office of the USTR is an executive agency of the United States charged with investigating the trade practices of foreign countries under Section 301 of the Trade Act and

implementing appropriate responses, subject to the direction of the President.  The USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 4A.

9.     Defendant Katherine C. Tai is the current USTR and serves as the director of the Office of the USTR.  The USTR, using the powers and authority of the office, made numerous decisions regarding List 4A.

10.     Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports. CBP collected payments made by Plaintiff to account for the tariffs imposed by the USTR under List 4A.

11.     Defendant Troy A. Miller is the Senior Official Performing the Duties of the Commissioner of CBP.  In this capacity, he oversees CBP's collection of duties paid by Plaintiff under List 4A.

**STANDING**

12.     Plaintiff has standing to sue because it is "adversely affected or aggrieved by agency action" within the meaning of the APA.  5 U.S.C. § 702;  *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").  The tariffs imposed by Defendants pursuant to List 4A have adversely affected and aggrieved Plaintiff because Plaintiff has been and continues to be required to pay these unlawful duties.

**TIMELINESS OF THE ACTION**

13.     A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

14.     Plaintiff's claims accrued – at the earliest – on August 20, 2019, when USTR published notice of List 4A in the *Federal Register*.   *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019).

15.     Plaintiff's claims were brought within two (2) years of the date Plaintiff's cause of action first accrued.  Plaintiff has therefore timely filed this action.

## PROCEDURAL HISTORY

### I.      USTR's Investigation under Section 301 of the Trade Act

16.     On August 14, 2017, President Trump directed U.S. Trade Representative Lighthizer to consider initiating an investigation under Section 301(b) of the Trade Act concerning China's laws, policies, practices and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).

17.     According to the President, certain Chinese "laws, policies, practices, and actions" on intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." 82 Fed. Reg. 39,007.

18.     Section 301 of the Trade Act authorizes the USTR to investigate a foreign country's trade practices. 19 U.S.C. § 2411(b). If the investigation reveals an "unreasonable or discriminatory" practice, the USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice. *Id*. § 2411(b), (c)(1)(B).

19.     On August 18, 2017, the USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

20.     Seven months later, on March 22, 2018, the USTR released a report announcing the results of its investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), *available at* https://ustr.govisites/default/files/Section%20301%20FINAL.PDF.

21.     In its report, the USTR found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id*. at 17. The USTR based these findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id*. at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id*. at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id*. at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id*. at 171.  The USTR did not quantify in its report the burden or restriction imposed on U.S. commerce by the investigated practices.

22.     The USTR also separately published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet. The USTR also indicated that, consistent with a directive from the President, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id.; see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

## II.     List 1 and List 2

23.     Section 304 of the Trade Act requires the USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation. 19 U.S.C. § 2414(a)(1)(B), (2)(B).

24.     Between April and August 2018 (*i.e.*, within the 12-month statutory deadline from the initiation of the investigation in August 2017), Defendants undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing duties on imports from China covered by the so-called Lists 1 and 2.

25.     On April 6, 2018, the USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,

83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id*. at 14,907.  The USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

26.    On June 20, 2018, the USTR published notice of its final list of products subject to an additional duty of 25% *ad valorem*, a list commonly known as "**List 1**." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018).  The USTR explained that it had "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id*. at 28,711.

27.    At the same time that it finalized List 1, the USTR announced that it intended to impose a 25% *ad valorem* duty on a second proposed list of Chinese products to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation. *Id*. at 28,712.  The USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id*. at 28,711-12.

28.    On August 16, 2018, the USTR published notice of the final list of products subject to an additional duty of 25% *ad valorem* in **List 2**, comprising "279 tariff subheadings" whose

"annual trade value . . . remains approximately $16 billion." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

### III.   Lists 3 & 4

29.     As soon as the USTR announced the results of its investigation in March 2018, tensions between the governments of China and the United States escalated dramatically. In the months that followed, Defendants wildly expanded the scope of the tariffs imposed under Section 301 of the Trade Act to cover imports worth more than $500 billion—ten times the amount it had deemed "commensurate" with the findings of USTR's original investigation. Defendants did so for reasons untethered to the unfair practices that the USTR had investigated, namely in response to China's retaliatory tariffs and other issues unrelated to the Section 301 investigation.

#### A.   List 3

30.     Shortly after President Trump directed the USTR in April 2018 to consider imposing duties on $50 billion in Chinese products, China threatened to impose retaliatory duties on the same value of imports from the United States.  In response, President Trump "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation." THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-additional-proposed-section-301-remedies/.

31.     When the USTR finalized List 1 in mid-June 2018, President Trump warned China that he would consider imposing additional tariffs on Chinese goods if China retaliated against the United States. *E.g.,* Vicki Needham & Max Greenwood, *Trump Announces Tariffs on $50 Billion*

*in Chinese Goods*, THE HILL (June 15, 2018), *available at* http://thehill.com/homenews/administration/392421-trump-announces-tariffs-on-50-billion-in-chinese-goods ("The president said the United States will pursue additional tariffs if China retaliates 'such as imposing new tariffs on United States goods, services or agricultural products; raising non-tariff barriers; or taking punitive actions against American exporters or American companies operating in China.").

32.    Following through on his warning, on June 18, 2018, President Trump formally directed the USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion—despite the USTR having not yet implemented List 1 and List 2.  President Trump acknowledged that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated his decision. THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

33.    Acknowledging the purpose of the President's directive, the USTR stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than any of the harms identified in its Section 301 investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property

theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

34.    Despite these warnings from Defendants, China retaliated by imposing 25*% ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

35.    After China imposed its first round of retaliatory duties, the USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent ad valorem duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 33,608 (July 17, 2018). USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which the USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id*. at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)).  The USTR initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id*. at 33,608.

36.    In its notice, the USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action.  *Id*. at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal

to change its acts, policies, and practices"). The USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.; see also id.* (Because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Although it pointed to China's retaliatory measures, the USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that the USTR had investigated under Section 301 of the Trade Act. *See id.* The USTR's contemporaneous press statements corroborated the contents of its notice: China's retaliatory duties motivated its proposed action.

37. President Trump suggested that the United States' trade imbalance with China supported the decision. @realDonaldTrump, Twitter (July 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTrump/status/1005982266496094209. Over the following weeks, President Trump also expressed his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations. *See, e.g.,* @realDonaldTrump, Twitter (July 20, 2018, 8:43 AM EDT), https://twitter.com/realDonaldTrump/status/1020287981020729344; @realDonaldTrump, Twitter (July 20, 2018, 8:51 AM EDT), https://twitter.com/realDonald Trump/status/1020290163933630464; @realDonaldTrump, Twitter (July 25, 2018, 7:20 AM EDT), https://twitter.com/realDonaldTrump/status/1022079127799701504; @realDonaldTrump, Twitter (July 25, 2018, 7:01 AM EDT), https://twitter.com/realDonaldTrump/status/1022074252999225344.

38.    Within days of these statements, Ambassador Lighthizer announced that, in light of China's retaliatory duties, the USTR would propose to increase the additional duty from 10% to 25% *ad valorem*.  Rather than addressing the practices that the USTR investigated pursuant to Section 301 of the Trade Act (or initiating a new investigation), he stated that China "regrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/statement-us-trade-representative.

39.    Shortly thereafter, the USTR, at the direction of the President, formally proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018).  The USTR also set new dates for a public hearing over six days ending on August 27, 2018. *See id.*; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

40.    At the same time, the USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018—less than one month later—as the new deadline for both *initial and rebuttal* comments from the public. 83 Fed. Reg. at 38,761. That adjustment, deviating from its past practices, prevented both the USTR and the public from considering initial comments at the hearing and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. The USTR also limited each hearing participant to five minutes.

Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001. Despite those obstacles, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. *Id*.

41.    Just eleven days after receiving final comments from the public, the President announced that he had directed the USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018) https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/. Once again, the President made clear that China's response to the $50 billion tariff action (*i.e.*, List 1 and List 2 duties) motivated his decision, and he immediately promised to proceed with "phase three" of the plan—an *additional $267 billion tariff action*—"if China takes retaliatory action against our farmers or other industries." *Id*.

42.    Following the President's announcement, the USTR published notice of the final list of products subject to additional duty, a list commonly known as "**List 3**." 83 Fed. Reg. at 47,974. The USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019. *Id.* The USTR determined that the List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id.* The USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses. *Id.*

43.    As legal support for its action, the USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which provides that the USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id*. (brackets omitted). The USTR stated that

the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id*. The USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id*. at 47,975.

44.     In the months that followed, China and the United States attempted to resolve their differences through trade negotiations. Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018, and again in February 2019, that it would delay the scheduled increase in the List 3 duty rate from 10 to 25%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

45.     The trade negotiations ultimately fell apart.  In May 2019, the USTR announced that the tariff rate on List 3 goods was being raised to 25%, effective either May 10, 2019 or June 1, 2019, depending on the date of export. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019).  The notice cited China's

decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate. *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459. Unlike with past imposition of new tariffs, the USTR did not seek public comment but rather simply announced that the increase would occur. *Id*.

46. The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint, with the exception of the limited number of products for which the USTR extended its originally granted exclusions from the List 3 duties. *See, e.g.*, *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).

**B.    List 4**

47. On May 17, 2019, just eight days after it published notice of its decision to increase the duty rate on imports covered by List 3, the USTR announced its intent to proceed with yet another list—List 4—covering even more products subject to additional duties. Under the USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem* on products worth $300 billion. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019). The USTR explained that its decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce." *Id*.

48. Similar to the process followed for List 3, the USTR invited the public to comment on proposed List 4 and participate in a hearing. *Id*. The public submitted nearly 3,000 comments. Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001. Despite the opportunity to comment, the timeline for participation in the hearing left little room for

meaningful input: the USTR required witnesses to submit drafts of their testimony by June 10, 2019, some seven days before the deadline for fully developed written comments, and then it again limited witnesses to five minutes of testimony at the hearing. *Id.*

49.   On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, President Trump announced that the List 4 tariffs would become effective September 1, 2019 at a rate of 10% *ad valorem*. @realDonaldTrump, TWITTER (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/realDonaldTrump/status/1156979446877962243 (noting a "small additional Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

50.   On August 20, 2019, the USTR issued a final notice adopting **List 4** in two tranches. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). **List 4A** would impose a 10% ad valorem duty on goods worth roughly $120 billion, effective September 1, 2019. *Id.* at 43,304. **List 4B** would impose a 10% ad valorem duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. *Id.* at 43,305. Once again, the USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to claim that its determination "takes account of the public comments and the testimony." *Id.*

51.   As legal support for its action, the USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act. *Id.* at 43,304. But instead of finding any increased burden on U.S. commerce from the practices that were the subject of the USTR's investigation, the USTR merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices

as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id.*

52.     Just ten days later, on August 30, 2019, the USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019). The USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id.* at 45,822. The USTR once again cited as grounds for its action China's retreat from its negotiation commitments and devaluation of its currency. *Id.*

53.     On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, the USTR published notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). The USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, *id.*, an action that ultimately became effective on February 14, 2020, when the USTR halved the applicable duty rate, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

54.     In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-states-

and-china-reach.  During that time, Defendants declined to impose additional duties on imports covered by List 4B, presumably because China had agreed to some new, unrelated obligations under the limited trade deal.

55.    The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint.

## COUNT ONE

## (DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)

56.    Paragraphs 1 through 55 are incorporated by reference.

57.    The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

58.    The Trade Act of 1974 does not authorize the action taken by Defendants that resulted in the List 4A tariffs.

59.    Section 301 of the Trade Act permits the USTR to impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b).  The USTR failed to predicate its action giving rise to List 4A on any such determination.

60.    If the USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires the USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B).  The USTR's action giving rise to List 4A occurred in August 2019, two years after USTR initiated the underlying Section 301 investigation on August 18, 2017.

61.     Section 307 of the Trade Act authorizes the USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B).  Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that the USTR investigated pursuant to Section 301 of the Trade Act.

62.     Section 307 of the Trade Act also authorizes the USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by the USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C).  However, Section 307 of the Trade Act does not authorize Defendants to *increase* tariff actions that are "no longer appropriate," but rather only to delay, taper, or terminate such actions.

63.     Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions which gave rise to List 4A are *ultra vires* and contrary to law.

## **COUNT TWO**

## **(VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)**

64.     Paragraphs 1 through 55 are incorporated by reference.

65.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

66.     Defendants exceeded their authority under the Trade Act in promulgating List 4A and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

67.     Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of the USTR's Section 301 investigation.

68.     Defendants also implemented List 4A in an arbitrary and capricious manner because they did not provide sufficient opportunity for public comment and failed to adequately explain the rationale for their actions.   Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 4A.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and:

1.     declare that Defendants' actions resulting in tariffs on products covered by List 4A are unauthorized by, and contrary to, the Trade Act;

2.     declare that Defendants arbitrarily and unlawfully promulgated List 4A in violation of the APA;

3.     vacate the List 4A rulemaking;

4.     order Defendants to refund, with interest, any duties paid by Plaintiff pursuant to List 4A;

5.     permanently enjoin Defendants from applying List 4A tariffs against Plaintiff and collecting any duties from Plaintiff pursuant to List 4A;

6.     award Plaintiff its costs and reasonable attorney fees; and

7.      grant such other and further relief as may be just and proper.

Respectfully submitted,

*/s/ Frederick P. Waite*
Frederick P. Waite
Kimberly R. Young

VORYS SATER SEYMOUR & PEASE LLP
1909 K Street, NW, Suite 900
Washington, DC 20006

*Counsel to Plaintiff*
*Tata International Metals (Americas)*
*Ltd.*

Dated: April 20, 2021

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on April 20, 2021, copies of Plaintiff's Summons and Complaint were served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

General Counsel
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

/s/ Kimberly R. Young
Kimberly R. Young